UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL ACTION NO. 2008-17 (WOB)

ROGER KINMAN                                           PLAINTIFF

VS.                    **MEMORANDUM OPINION AND ORDER**

CAMPBELL COUNTY DETENTION CENTER,
ET AL                                                 DEFENDANTS

On September 13, 2010, oral argument on defendants' motions for summary judgment (Doc. #50, #51) was held in this matter. Brian Halloran represented the plaintiff, Roger Kinman. Jeff Mando represented defendants Campbell County Detention Center, Campbell County Fiscal Court, and Campbell County Jailer Greg Buckler (in both his official and individual capacities). Robert Duncan represented defendant Southern Health Partners, Inc. Also in attendance at the hearing was Campbell County Jailer Greg Buckler and Campbell County Attorney James Daley. Official court reporter Joan Averdick recorded the proceedings.

**Factual Background**

This is an action under 42 U.S.C. § 1983, whereby plaintiff alleges violation of his civil rights as a result of a lack of, or denial of, medical treatment for an injury he sustained while housed at the Campbell County Detention Center.

1

Plaintiff Roger Kinman was an inmate of the Campbell County Detention Center from July 27, 2008 through February 12, 2007. He had been transferred there from the Marion County Jail and, upon admission, was housed in the Restrictive Custody Center. He was permitted to participate in a work release program. The Restrictive Custody Center was separate from the Campbell County Jail itself, but was located across the street.

Mr. Kinman was being treated for hypertension and high cholesterol before and upon admission to the detention center. He received medications for both while in the detention center. Although he testified that he didn't always get the pills, he never filed a complaint or grievance.

In December of 2006, Mr. Kinman hit his elbow on his bed coming back to his cell from the bathroom. He did not cut himself, nor did the area open up or bleed. The area stung and hurt for a day or two and then started to swell. It was tight for a week or two but then the swelling went down. Kinman states that he showed the area to different deputies at the time, but did not ask to see a doctor. This all occurred some time around Christmas of 2006.

During the week before Monday, January 15, 2007, his arm again became swollen, tight and painful. Over the weekend his condition worsened, so on Monday he showed his arm to a deputy, asked to see a doctor and asked for a medical request form. The

deputy immediately walked him across the street to the jail where the medical clinic was located.  The nurse at the jail clinic looked at his arm, took his vital signs and charted that he had minimal edema.  The nurse agreed that he needed to see the doctor and set up an appointment for Mr. Kinman on the next day that the doctor would be at the jail.  Two days later, Mr. Kinman was seen by Dr. Robert Weber.  The doctor prescribed an anti-inflammatory medication used to reduce pain, stiffness and swelling.

Mr. Kinman testified at deposition that he had asked to see a doctor several times before January 15th, but he could not recall which deputies he spoke to or when.  (Doc. #51-3, p.59). Mr. Kinman had never filled out the request for medical attention form that he knew was required.  (Id. at p.60).  Nor did he complain to anyone in charge that his requests were going unheeded.  (Id. at p.61).

Mr. Kinman continued to go out on work release details from January 1st to January 15th of 2007.  He did so again after seeing Dr. Weber on January 17th.  Mr. Kinman continued to experience pain in his left arm and asked to see Dr. Weber throughout the following week.  Mr. Kinman filled out a medical request form sometime on the subsequent weekend, but he was told that the doctor was not in.  Mr. Kinman does not know the name of any of the deputies he complained to during this time period. (Id. at p.59-61, 63, 67, 68-71).

3

By Friday, January 26th, Mr. Kinman's arm had developed a yellow area in it. He did not report to the work release detail, but stayed in his bunk and showed his arm to the deputies on duty. He does not recall their names but remembers going to see Captain Ballinger, a supervisor at the detention center. (Id. at p.72-73). The Captain immediately ordered a deputy to take him to see the nurse. The nurse looked at it, lanced it, drained it and bandaged it. (Id. at p.69, 72-77).

The nurse told Mr. Kinman that he had an infection. (Id. at p.77). The nurse then said that she was going to place him in isolation and would get him some antibiotics. (Id. at p.77-78). Mr. Kinman's medical records reflect that a verbal order for an antibiotic for him was given to a nurse by Dr. Weber that same day. (Doc. #51-4).

The wound on Mr. Kinman's elbow continued to drain but he claims that he wasn't given anything other than bandages to clean or dress the wound over the weekend. On Monday, January 29th, the same nurse saw Mr. Kinman again and rewrapped his arm. Mr. Kinman asked the nurse on that day about the antibiotics and was told that they were on the medicine cart and, when it came around, he would get them.

On Tuesday, January 30th, Mr. Kinman saw the nurse yet again. The nurse redressed the wound and released Mr. Kinman from isolation. (Doc. #51-3, p.86-87). By then, his arm was

feeling better.  He was able to raise his arm above his head so he was told he could return to the work detail.  On February 9, 2007, Mr. Kinman was told he would be released on parole on February 12th.  Mr. Kinman is uncertain, but he thinks he may have filled out another form to see the doctor sometime between January 30th and February 12th.  (Id. at p.92-93).

Upon his release from the detention center on February 12, 2007, Mr. Kinman was handed a packet of antibiotics, which Dr. Weber had ordered on January 26th, but were never administered.  (Doc. #30, ¶28, Doc. #51-3, p.98).  As of February 9, 2007, Mr. Kinman was certain that he had suffered an infection in his arm and that he had never received the antibiotics that were prescribed to him.  (Doc. #51-3, p.96).

Once Mr. Kinman got home, he tried to get an appointment to see his family doctor but was unsuccessful.  Mr. Kinman ultimately went to the emergency room at St. Elizabeth Medical Center three days after his release from the Campbell County Detention Center.  The emergency room doctor took X-rays and cultures and wrote him prescriptions for antibiotics and pain medication.  Mr. Kinman was then discharged.  Once he got home, there was a telephone message waiting for Mr. Kinman telling him to return to the hospital because the cultures had turned out to be positive for signs of infection.  Mr. Kinman returned to the hospital and was admitted.  He was treated with intravenous

antibiotics for forty-one days.  After his discharge from the hospital, Mr. Kinman suffered several outbreaks on his skin that was diagnosed as likely MRSA (Methicillin Resistant *Staphylococcus aureus*) infections.

Mr. Kinman filed his complaint in this action on February 12, 2008, against the Campbell County Detention Center, the Campbell County Fiscal Court, Campbell County Jailer Greg L. Buckler, Dr. Robert D. Weber, and unknown members of the Campbell County Detention Center medical personnel and staff.

Mr. Kinman has since voluntarily dismissed Dr. Weber as a defendant, pursuant to FRCP 41 (a), on September 5, 2008.  On June 19, 2009, Mr. Kinman amended his complaint to name Southern Health Systems, Inc. as a defendant.  On October 15, 2009, Mr. Kinman once again amended his complaint and named Southern Health Partners, Inc. as a defendant in this matter.

**ANALYSIS**

**I.    Summary Judgment**

Summary judgment is warranted where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  "In considering a motion for summary judgment, [the court] view[s] the factual evidence and draw[s]

all reasonable inferences in favor of the non-moving party." *Dominguez v. Correctional Med. Services*, 555 F.3d 543, 549 (6th Cir. 2009) (citation omitted). "A mere scintilla of evidence is insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." Id. (internal quotations and citation omitted).

**II. Statute of Limitations**

The resolution of this case hinges on the question of whether the statute of limitations has run on Plaintiff's claims. For the reasons stated below, the court finds that the statute of limitations expired prior to Plaintiff filing his complaint.

In 42 U.S.C. § 1983 litigation, the limitations period to be applied is borrowed from the applicable state law. The question of which is the most analogous state law for statute of limitations purposes is a question of federal law. All § 1983 actions are treated as claims for personal injuries for limitations purposes. *Wilson v. Garcia,* 471 U.S. 261, 276 (1985) and *Owens v. Okure,* 488 U.S. 235, 250 (1989).

In Kentucky, actions for personal injury must be filed within one year after the cause of action accrues, pursuant to K.R.S. 413.140(1)(a). *Collard v. Kentucky Bd. of Nursing,* 896 F.2d 179, 182 (6th Cir. 1990) *and Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996). However, the accrual of a § 1983 cause of

action is a question of federal law that is not resolved by reference to state law. *Wallace v. Kato,* 549 U.S. 384, 388 (2007).

Two tests have been established to assist in determining when a § 1983 cause of action accrues: (1) the "time of event" rule, and (2) the "discovery" rule.

The two rules and their respective rationales have been well explained by the Sixth Circuit in *Hicks v. Hines,* 826 F.2d 1543 (6th Cir. 1987). "If greater than *de minimis* harm is discernable at the time of the tortious event, then the 'time of the event' rule applies, plaintiff's cause of action accrues, and the statute of limitations begins to run." *Id.* at 1544. This is true even if the plaintiff later discovers that the extent of his injuries is more severe than originally believed. *Id.*

On the other hand, "if the injured person sustains an injury which cannot itself reasonably be discovered, or the cause of which cannot reasonably be discovered, until some time following the tortious event and the running of the statute of limitations . . ." then the "discovery" rule would apply and the plaintiff's cause of action would then accrue on the date that he learned of or reasonably should have discovered his injury. *Id.*

Under the "time of event" rule, plaintiff's injury would have accrued in late December of 2006, at the time he first injured his elbow while he was at the Campbell County Detention

Center.  (Doc. #51-3, p.47).  Thus, he would have been required to file his suit no later than late December of 2007.  Mr. Kinman filed his complaint on February 12, 2008.  (Doc. #1).

However, Mr. Kinman argues that his was a latent injury which calls for the "discovery" rule of accrual for statute of limitations purposes.  Even under the more generous standard of the "discovery" rule, plaintiff's complaint still falls outside the one year statute of limitations period.

In the instant case, Mr. Kinman was explicitly told by a medical professional on January 26, 2007, that he had suffered an infection in his elbow.  (Doc. #51-3, p. 75-77).  That same day, antibiotics were prescribed for Mr. Kinman.  (Doc. #51-4).  Mr. Kinman admits he had knowledge of his own injury no later than February 9, 2007.

> *Q.   And you knew as of the 9th, if not before, that you had an infection in your elbow?*
>
> *A.   Yes, sir, I was sure it was an infection.*

(Doc. #51-3, p.96).

In addition to having knowledge of the specific injury he was suffering from, the record clearly demonstrates that Mr. Kinman was well aware of the fact that he was not receiving the doctor-ordered medications.

> *Q.   When did you first learn that you were supposed to be receiving antibiotics?*
>
> *A.   The day that she lanced it.*

> Q. *So on the 26th of January the nurse told you that you were going to be given a prescription for some antibiotics because you had this infection, correct?*
>
> A. *Yes, sir.*
>
> Q. *And it was from that point forward that you continued to ask the deputies and anyone else that would listen to you where your antibiotics were that you were supposed to be getting?*
>
> A. *Yes, sir.*
>
> Q. *After you were released from the isolation cell and you went back over to the RCC on January 30th, did you continue to ask about the antibiotics?*
>
> A. *Yes, sir.*
>
> Q. *Who did you ask?*
>
> A. *Every day I asked the deputies that was passing out meds or when we went through and received mail, I'd say, you know, "The nurse prescribed me antibiotics. She said she was going to, and I still have not received them." Every day I'd ask for them because my arm felt like it was swelling up more all the time. And I'm not a great one on stuff, but I feel like antibiotics might have kept the swelling down.*

(Id. at p.96-97).

Mr. Kinman knew he was supposed to be receiving antibiotics for his infection starting on January 26, 2007. He also knew that he was not receiving the prescribed medications and made repeated requests for them. Ultimately, Mr. Kinman's knowledge of the detention center's failure to provide the prescribed antibiotics (for whatever reason) predates his release from the detention center on February 12, 2007.

Thus, even when applying the "discovery" rule for the accrual of the statute of limitations to the facts of Mr. Kinman's case, he cannot show that he reasonably discovered his injury, and the accompanying claim for it, at any point in time other than January 26th at the earliest, and February 9, 2007 at the latest. Since he failed to file his complaint until February 12, 2008 (one year from the date of his release from the Campbell County Detention Center vice one year from the date his claim would have begun to accrue), his claims are now time-barred.

**III. State Law Claims**

Because the court is dismissing plaintiffs' federal causes of action solely on the statute of limitations defense, the court will decline to exercise its supplemental jurisdiction over the plaintiffs' state law claims. *See* 28 U.S.C. § 1367(c). Those claims will thus be dismissed without prejudice.

Therefore, having reviewed this matter, and the court being otherwise sufficiently advised,

**IT IS ORDERED** that:

(1) The joint motion for summary judgment by defendants, Campbell County Detention Center, Campbell County Fiscal Court, and Campbell County Jailer Greg Buckler, (Doc. #50) be, and is hereby **GRANTED,** and all federal claims be, and are hereby,

**DISMISSED WITH PREJUDICE;**

(2) That the motion for summary judgment by defendant, Southern Health Partners, Inc., (Doc. #51) be, and is hereby **GRANTED,** and all federal claims be, and are hereby, **DISMISSED WITH PREJUDICE;**

(4) That the court declines to exercise its supplemental jurisdiction over plaintiff's state law claims under 28 U.S.C. § 1367(c)(3), and those claims be, and are hereby, **DISMISSED WITHOUT PREJUDICE.**

(5) A separate judgment shall enter concurrently herewith.

This 17th day of September, 2010.



Signed By:
*William O. Bertelsman* WOB
United States District Judge

TIC: 17 minutes